**FILED**
**Apr 11, 2023**
**07:17 AM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT GRAY

| | |
|---|---|
| **GREGORY BROCK,** ) | **Docket No. 2021-02-0170** |
| **Employee,** ) | |
| **v.** ) | **State File No. 800174-2021** |
| **DOLLAR GENERAL,** ) | |
| **CORPORATION,** ) | **Judge Brian K. Addington** |
| **Employer.** ) | |

---

## COMPENSATION ORDER GRANTING SUMMARY JUDGMENT

---

On March 31, 2023, the Court heard Dollar General's Motion for Summary Judgment arguing the lack of genuine issues of material fact as to whether Mr. Brock's injuries primarily arose out of and in the course and scope of employment. Because the undisputed facts affirmatively negate an essential element of Mr. Brock's claim, and Mr. Brock was unable to show he is entitled to recover under these facts, the Court grants Dollar General's motion and dismisses this claim.

## Claim History

Mr. Brock fell to the floor during training at Dollar General's corporate office on January 28, 2020. In his affidavit, he stated that he did not fall from tripping or slipping. Instead, he collapsed to the floor after reading emails from his supervisor. Before the fall, he alleges he was subjected to multiple, abusive phone conversations with his supervisor after he requested a transfer to South Carolina. He claimed injuries to his neck, back, left shoulder, and left knee, as well as PTSD and depression.

Dollar General contends that Mr. Brock's alleged physical injuries did not primarily arise out of his employment and that his alleged mental injuries are not compensable under Tennessee law.

1

*Facts*

Dollar General's motion is accompanied by the following verbatim statement of undisputed facts and Mr. Brock's responses.[1]

a)  Employee started as an employee at Employer on June 29, 2019 in the position of District Manager.
   *RESPONSE: Admit.*

b)  Shawn Bartels worked for Employer as Regional Director.
   *RESPONSE: Admit.*

c)  Shawn Bartels was Employee's superior at Employer.
   *RESPONSE: Admit.*

d) On January 28, 2020, Employee was at Employer's national headquarters in Goodlettsville, Tennessee where he and other District Managers were receiving training.
   *RESPONSE: Admit.*

e)  Employee exchanged a total of four emails with Shawn Bartels on January 28, 2020 that pertain to Employee incorrectly filling out a form.
   *RESPONSE: Admit.*

f)  Employee fell in the cafeteria while pouring himself a cup of coffee on January 28, 2020 at Employer's national headquarters in Goodlettsville, Tennessee.
   *RESPONSE: Admit.*

g) Employee cannot remember falling to the ground on January 28, 2020 in the cafeteria at Employer's national headquarters in Goodlettsville, Tennessee.
   *RESPONSE: Admit. However, as stated in my Affidavit, "I just recall that I had just had a plan a week before that I was going to commit suicide. I had it all mapped out. And when that happened, when I got up and was walking before the fall, I was thinking that he's going to harass me forever and there's no way out but to die."*

h)  Before falling in the cafeteria on January 28, 2020, Employee became mentally-stressed from reading an email from Shawn Bartels on January 28, 2020 that pertained to Employee incorrectly filling out a form.

---

[1] Both parties supported their assertions with citations to the record.

*RESPONSE: Admit. In addition, my head was spinning with the emails, the phone calls, the verbal abuse, nonstop harassment and I knew it would never end and fell to the floor.*

i) Employee is unaware of any other reason for his January 28, 2020 fall other than his own mental stress.

*RESPONSE: Deny. I know that instantly after reading the email prior to the fall from Mr. Bartels, triggered my fall. I had already overcome his hostile work environment, abusive remarks, bullying, and demonstrative actions toward me since I gave him a seven month notice. Dr. Ricardo Fermo states in my medical record that any "reasonable person" would come to the same conclusion.*

j) Aaron Dalton is a District Manager for Employer overseeing stores in the Appleton/Green Bay area of Wisconsin and was at Employer's national headquarters on January 28, 2020 for training.

*RESPONSE: Admit that I have no knowledge of what Aaron Dalton oversees as a DM.*

k) Mr. Dalton and Employee became acquainted before January 28, 2020.

*RESPONSE: Admit.*

l) Mr. Dalton was in the cafeteria at Employer's national headquarters on January 28, 2020.

*RESPONSE: Admit.*

m) Mr. Dalton witnessed Employee fall to the ground in the cafeteria without tripping or slipping on anything.

*RESPONSE: Deny. I have no knowledge of what Mr. Dalton saw or remembers.*

n) Mr. Dalton witnessed Employee fall without coming into contact with an object or structure in the cafeteria on his way to the ground.

*RESPONSE: Deny. I have no knowledge of what Mr. Dalton saw or remembers.*

o) Following his January 28, 2020 fall, Employee filed a workers' compensation claim seeking benefits for physical injuries to his neck, back, left shoulder, and left knee, as well as mental injuries in the form of PTSD and depression.

*RESPONSE: Admit. In addition, Dr. Ricardo Fermo and Dr. Thomas Ellison states to a "Reasonable Degree of Medical Certainty," that these claims are true and any reasonable person would come to the same conclusion. And Dr. Thomas Ellison states in the C-30A a 28 percent impairment rating for my physical injuries.*

3

p) While a District Manager at Employer, Employee communicated with Shawn Bartels multiple times a week.

   *RESPONSE:* *Admit.*

q) Employee's symptoms of mental illness began after numerous communications—including phone calls, text messages, and emails—with Shawn Bartels between October of 2019 and January 28, 2020.

   *RESPONSE:* *Deny. Employee is not a clinician and is not qualified to make a diagnosis.*

r) Employee's symptoms of mental illness began prior to January 28, 2020.

   *RESPONSE:* *Deny. Employee is not a clinician and is not qualified to make a diagnosis.*

s) The source of Employee's mental distress is not a singular communication or interaction with Shawn Bartels.

   *RESPONSE:* *Deny. Employee is not a medical clinician and is not qualified to make a diagnosis, however, I have overcome stressful events that Mr. Bartels has created. The email communications on January 28, 2020 from Mr. Bartels triggered an emotional event at that moment that mentally was devastating to my mental health and body.*

t) Employee is unaware of the exact date he began experiencing symptoms of mental illness/distress.

   *RESPONSE:* *Deny, however, employee is unaware of the exact date he began experiencing symptoms of mental illness/distress. However, Mr. Bartels started using abusive and harassment statements prior to the call ending on November 01, 2019 when we were discussing my transfer to South Carolina.*

u) Employee's pursuit of this workers' compensation claim has contributed to his mental distress.

   *RESPONSE:* *Admit. In addition, that this process has had a devastating impact on my family over the last three years. The pain that occurs in my neck also causes stress remembering the reason that I received this injury on January 28, 2020. In September 2021, Dollar General Senior Human Resource employees . . . went on my personal LinkedIn account and deleted my connects from my messages that I sent out from my personal account. I recall being stressed out that Dollar General Senior Human Resource employees were violating my personal account and that Dollar General Senior Human Resource employees were continuing the harassment that is the cause of my injuries and this litigation.*

4

*Arguments*

Dollar General contends that Mr. Brock's responses and admissions failed to create genuine issues regarding Mr. Brock's fall and the gradually occurring nature of his alleged mental injuries. Based on the above, Dollar General argues it is entitled to summary judgment because Mr. Brock's fall was not the result of or exacerbated by an employment hazard.

Dollar General also submitted an affidavit of District Manager Aaron Dalton stating that he witnessed Mr. Brock's fall. He said that he did not see Mr. Brock trip, slip, or otherwise hit anything when he fell to the floor.

Regarding the mental injury, Dollar General argues that Mr. Brock is asserting a gradually occurring mental injury, which is not recognized by Tennessee Workers' Compensation law.[2] Further, his admissions suggest that he suffered from cumulative stress that caused his fall.

Mr. Brock admits that he has no knowledge of the fall. He admits that cumulative incidents caused him stress at work, and he relies on his physician's affidavit[3] to assert that cumulative mental issues at work caused him to fall that day.

**Law and Analysis**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

As the party requesting summary judgment, Dollar General must do one of two things to prevail: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim, or 2) demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Tenn. Code Ann. § 20-16-101 (2022); *see also Rye v. Women's Care Ctr. of Memphis*, *MPLLC,* 488 S.W.3d 235, 264 (Tenn.2015). If Dollar General meets this burden, Mr. Brock must then establish that the record contains specific facts upon which the Court could base a decision in his favor. *Rye*, at 265.

---

[2] Typically, this argument could also be filed as a failure to state a claim upon which relief should be granted, but it can also be considered under Rule 56 since more than the pleadings are considered. Regardless, the Court considered it as a Rule 56 motion.

[3] For the purposes of this motion, when the Court must consider information in a light favorable to the responding party, the Court determines that Mr. Brock filed an affidavit from Dr. Ferno containing his opinion on events and diagnosis. Otherwise, the Court would consider the affidavit as only a certification of medical records, which the Court cannot consider for summary judgment purposes.

*Injury Arising Primarily out of Employment*

Dollar General argues it offered evidence that negates an essential element of Mr. Brock's claim—that his injury did not arise primarily out of his employment. It further argues that Mr. Brock's evidence is insufficient to create a genuine dispute on the underlying facts regarding his fall.

Tennessee Code Annotated section 50-6-102(12) states that a workers' compensation *injury* must *primarily* arise out of and in the course and scope of employment. "Arising out of" means that the event causing the injury must have its origin in a risk connected with the employment. "An injury must both arise out of as well as be in the course and scope of employment in order to be compensable under the workers' compensation statute." *Wilhelm v. Krogers*, 235 S.W.3d 122, 124 (Tenn. 2007). Simply being present at the place of injury because of the employment is not enough. *Thornton v. RCA Serv. Co.*, 221 S.W.2d 954, 955 (Tenn. 1949).

Dollar General does not dispute that Mr. Brock fell while he was acting within the course and scope of his employment. Rather, it argues that Mr. Brock's injury did not arise out of his employment because the facts show that, although Mr. Brock was attending a mandatory meeting, his fall was not the result of an employment condition, hazard, or risk.

The Court agrees. The facts show that Mr. Brock simply fell to the ground. He did not trip, slip, or fall due to a work hazard. Further, when he fell, he simply hit the floor. So, from a physical injury standpoint, the parties agree that no work hazard caused his physical injuries.

Therefore, the burden shifts to Mr. Brock to prove otherwise. He did not submit facts showing his fall was due to a risk or hazard of employment. Thus, Dollar General is entitled to summary judgment for his physical injuries from any hazard at work. *Byrom v. Randstad N. Am., L.P.,* No. M2011-00357-WC-R3-WC, 2012 Tenn. LEXIS 152, at *13 (Tenn. Workers' Comp. Panel Mar. 8, 2012).

*Mental Injury*

This leaves Mr. Brock's allegation that cumulative mental stress caused a mental injury which caused him to pass out and suffer physical injuries.

As to alleged mental injuries, "[t]here must be a specific, climactic event or series of incidents of an unusual or abnormal nature if the claimant is to be permitted a recovery. A premium should be placed upon specificity and clarity in identifying that which constitutes the 'accident' and upon demonstrating that such accident is directly attributable to employment." *Lane v. City of Cookeville*, No. M2006-00871-WC-R3-CV, 2007 Tenn. LEXIS 634, at *8 (Tenn. Workers' Comp. Panel Aug. 9, 2007).

Tennessee Code Annotated section 50-6-102(17) defines a compensable mental injury as one "arising primarily out of a compensable physical injury or an identifiable work-related event resulting in a sudden or unusual stimulus[.]" Since Mr. Brock's injuries did not arise from a compensable physical injury, then he must show that he suffered a sudden or unusual stimulus at work.

In addition, stress caused by the employment may not be usual stress but must be "extraordinary and unusual in comparison to the stress ordinarily experienced by employees in the same type of duty." *Bledsoe v. City of Dickson-Dep't of Police,* No. M2005-00919-WC-R3-CV, 2006 Tenn. LEXIS 440, at *16 (Tenn. Workers' Comp. Panel May 25, 2006). Further, "the ordinary stress of one's occupation does not meet this standard because emotional stress, to some degree, accompanies the performance of any contract of employment." *Id.*

Here, the episode allegedly causing Mr. Brock to fall is not an identifiable event of unusual or abnormal nature. Mr. Brock testified that he received what he considered multiple harassing phone calls and emails from his supervisor, but on the day in question the triggering events were four emails about filling out forms. Further, Dr. Ferno, Mr. Brock's own doctor in his affidavit, related the fall to a culmination of work-related stressors not an extraordinary or unusual event.

For the above reasons, the Court finds Dollar General demonstrated that Mr. Brock's evidence is insufficient to prove medical causation for his mental injury claim. Mr. Brock did not "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in his favor," *Rye,* at 265. The Court finds there is no genuine issue of material fact as to causation of Mr. Brock's injuries, and grants Dollar General's motion.

It is **ORDERED** as follows:

1. Dollar General's Motion for Summary Judgment is granted. Mr. Brock's claim is dismissed with prejudice to its refiling.

2. The Court taxes the $150.00 filing fee to Dollar General, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (2022) within five business days, and for which execution might issue if necessary.

3. Dollar General shall file a Statistical Data Form 2 (SD-2) with the Court Clerk within ten business days of the date this Order becomes final.

4. Unless appealed, this Order shall become final thirty days after entry.

**ENTERED April 11, 2023.**

_Brian K. Addington_
_____
**BRIAN K. ADDINGTON, JUDGE**
Court of Workers' Compensation Claims

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on April 11, 2023.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|------|------|------|
| Gregory Brock, Employee | X | | X | 5484 Buck Hill Dr. Myrtle Beach, SC 29588 brockcommunications911@gmail.com |
| Allen Grant, Ben Norris, Employer's Attorneys | | | X | agrant@eraclides.com bnorris@eraclides.com |

_Penny Shrum_
_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*